IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-142-D

YAQUELIN MEDINA,                        )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        **ORDER**
                                        )
WESTDALE BRENTMOOR, LLC,                )
d/b/a BRENTMOOR APARTMENTS,             )
et al.,                                 )
                                        )
                    Defendants.         )

        On February 28, 2019, Yaquelin Medina ("Medina" or "plaintiff"), on behalf of herself and

others similarly situated, filed a complaint against Westdale Brentmoor, LLC, d/b/a Brentmoor

Apartments ("Westdale Brentmoor"), Westdale Properties America I, LP, a/k/a Westdale Properties

America I, Ltd. ("Westdale Properties"), and Westdale Asset Management, Limited Partnership,

a/k/a Westdale Asset Management, Ltd. ("Westdale Asset;" collectively, "defendants") in Wake

County Superior Court [D.E. 1-1]. In the complaint, Medina alleged that defendants violated the

North Carolina Residential Rental Agreements Act ("RRAA"), N.C. Gen. Stat. § 42-38, et seq., the

North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50 et seq., and the North

Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 et seq. See

Compl. [D.E. 1-1] ¶¶ 103–148. On April 10, 2019, Westdale Asset timely removed the action to this

court [D.E. 1].

        On May 17, 2019, Westdale Asset moved to dismiss the complaint for failure to state a claim

[D.E. 18] and filed a memorandum in support [D.E. 19]. On the same date, Westdale Brentmoor and

Westdale Properties moved to dismiss the complaint for failure to state a claim [D.E. 20] and filed a memorandum in support [D.E. 21]. On July 5, 2019, Medina amended her complaint [D.E. 24]. Medina repeats the allegations and requests of her original complaint and also alleges that defendants made numerous negligent misrepresentations. See Am. Compl. [D.E. 24] ¶¶ 167–236. On August 19, 2019, defendants moved to dismiss the complaint for failure to state a claim [D.E. 26] and filed a memorandum in support [D.E. 27]. On October 14, 2019, Medina responded in opposition [D.E. 31]. On November 4, 2019, defendants replied [D.E. 33]. As explained below, the court grants defendants' motion to dismiss [D.E. 26].

I.

Medina is a former tenant who leased an apartment at Westdale Brentmoor from defendants for a term beginning March 1, 2017, and ending May 31, 2018. See Am. Compl. ¶¶ 8, 97; Pl.'s Ex. 1 [D.E. 24-1] 1, 14; Pl.'s Ex. 6 [D.E. 24-6] 1. Under the lease agreement, Medina paid a total rent amount of $1,338. See Pl.'s Ex. 1 [D.E. 24-1] 1; cf. Am. Compl. ¶ 99. Rent was due on or before the first day of each month, and the agreement provides no grace periods for payment. See Pl.'s Ex. 1 [D.E. 24-1] 1. Failure to pay to rent on time constituted default. See id. at 13 (emphasis omitted). If a tenant defaulted, the lease authorized defendants to file a summary ejectment complaint in state court. See id. at 13. If defendants did so, Medina agreed in the lease to pay the highest of three fees: a complaint filing fee, a court appearance fee, or a second trial fee. See id. at 13–14; cf. id. at 2. Medina also agreed to pay "any and all expenses, damages, and costs (including reasonable attorney's fees and court costs)" as a result of default. See id. at 13 (emphasis omitted).

Medina alleges that defendants follow a regular procedure if a tenant fails to timely pay rent. See Am. Compl. ¶ 38, 59. First, on approximately the sixth day of the month, defendants charge the tenant "late fees." See id. ¶¶ 33, 80; cf. Pl.'s Ex. 6 [D.E. 24-6] 2. Following the tenth day of the

month, defendants charge a separate amount for "eviction fees," at times before filing or serving a complaint for summary ejectment and without a court order. See Am. Compl. ¶¶ 57, 63, 80; cf. Pl.'s Ex. 6 [D.E. 24-6] 2.[1] The "eviction fees" are the complaint-filing fee ($96), the sheriff service fee ($30), and the flat attorney fee. See Am. Compl. ¶¶ 40–42, 45–47, 81.[2] When defendants assess the "late fees" and "eviction fees," defendants record both in the tenant's apartment account ledger as "Legal Fees." See Am. Compl. ¶ 64; cf. Pl.'s Ex. 6 [D.E. 24-6] 2–3. Following the tenth day of the month, defendants cause written letters or emails ("Collection Letter") to be delivered to the tenant stating that "[c]ourt papers were filed today for eviction/possession of your apartment," and that the only way to prevent eviction is to pay "the full balance and legal fee." See Am. Compl. ¶ 82 (emphasis omitted); cf. Pl.'s Ex. 5 [D.E. 24-5] 1. Once the fees are recorded on a tenant's ledger, plaintiff alleges that tenants owe the fees even if the summary ejectment case is dismissed or a judge orders the fees to be assessed against defendants. See Am. Compl. ¶ 93.

Medina did not timely pay rent on at least two occasions in June and July of 2017. See id. ¶¶ 103, 121. Following the fifth day of both months, defendants recorded a "late fee" of $66.90 in Medina's ledger. See id. Defendants then sent a Collection Letter to Medina on June 12, 2017, for the June default, and on July 11, 2017, for the July default. See id. ¶¶ 104–105, 122–23. On the same dates, defendants recorded the "eviction fees" in Medina's ledger. See id. ¶¶ 106, 124. The June "eviction fees" totaled $231, and the July eviction fees totaled $241. See id. Defendants filed a complaint for summary ejectment on June 15, 2017, for the June default and on July 14, 2017, for

---

[1] Medina's allegation that these costs were "fees" is a legal conclusion. Thus, the court need not accept as true that these amounts constituted "fees" under the RRAA. See Ashcroft v. Iqbal, 556 U.S. 662, 667–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 544–63 (2007).

[2] Medina alleges that the flat fee amount is $75, see Am. Compl. ¶ 42, while defendants contend that the fee was somewhat higher. See Def'ts' Resp. [D.E. 27] 5.

3

the July default. See id. ¶¶ 114, 128; cf. Pl.'s Ex. 7 [D.E. 24-7]; Pl.'s Ex. 8 [D.E. 24-8].

Medina alleges that, when defendants added the "eviction fees" to her ledger, defendants had not filed a summary ejectment complaint, the court had not charged its filing fee, and defendants had not incurred any costs of serving process. See id. ¶¶ 108–116, 125–133. Medina also alleges that the Collection Letter falsely claims that defendants were entitled to the "eviction fees." See id. ¶¶ 117, 134. Medina cured both instances of default by paying the "eviction fees" and late fees, and defendants voluntarily dismissed the summary ejectment complaints without prejudice. See id. ¶¶ 116–119, 134–137; cf. Pl.'s Ex. 7 [D.E. 24-7]; Pl.'s Ex. 8 [D.E. 24-8]. Medina alleges that she did not settle with defendants. See Am. Compl. ¶¶ 117, 135.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must view the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

4

Rather, a plaintiff's allegations must "nudge[ ] [the] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Defendants' motions require the court to consider the Medina's state law claims, and North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[3] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko,

---

[3] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

5

728 F.3d at 398 (quotation omitted); Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

### A.

Medina alleges that defendants violated the 2009 version of RRAA by charging court costs and other out-of-pocket expenses as "eviction fees" when Medina did not her pay rent on time. See Am. Compl. [D.E. 42] ¶¶167–173; N.C. Gen. Stat. § 42-46(h)(3). Medina also alleges that defendants violated the 2018 version of RRAA on the same grounds, and that defendants charged the "eviction fees" as reflected in the ledger before such fees were due. See Am. Compl. [D.E. 42] ¶¶174–181; N.C. Gen. Stat. § 42-46(i).

On June 14, 2018, the North Carolina General Assembly ("General Assembly") amended section 42-46(h)(3) of the RRAA. See An Act to Allow Landlords to Recover Out-of-Pocket Expenses in Summary Ejectment Cases, 2018 N.C. Sess. Laws 2018-50 (2018). On June 25, 2018, the amendment became effective. See id. The parties dispute whether the RRAA, before and after the 2018 amendment, prohibits landlords from charging tenants court costs and other actual out-of-pocket expenses arising from tenants' defaults. Compare [D.E. 27] 7–23 with [D.E. 31] 6–20.

"In construing a state law, [federal courts] look to the rules of construction applied by the enacting state's highest court." Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc., 492 F.3d 484, 489 (4th Cir. 2007); see In re DNA Ex Post Facto Issues, 561 F.3d 294, 300 (4th Cir.

6

2009). Accordingly, this court looks to the rules of statutory interpretation that the Supreme Court of North Carolina applies.

Under North Carolina law, "[t]he cardinal principle of statutory construction is to discern the intent of the legislature." State v. Jones, 359 N.C. 832, 835, 616 S.E.2d 496, 498 (2005); see Friends of Joe Sam Queen v. Ralph Hise for N.C. Senate, 223 N.C. App. 395, 402, 735 S.E.2d 229, 234 (2012). North Carolina courts consider a statute's text to discern legislative intent. See Shaw v. U.S. Airways, Inc., 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008); State v. Anthony, 351 N.C. 611, 614, 528 S.E.2d 321, 322 (2000). Thus, North Carolina courts "first look to the plain meaning of the statute." Frye Reg'l Med. Ctr., Inc. v. Hunt, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999). "Where the language of a statute is clear, the courts must give the statute its plain meaning . . . ." Id.

"In construing a statute with reference to an amendment it is presumed that the legislature intended either (a) to change the substance of the original act, or (b) to clarify the meaning of it." Childers v. Parker's, Inc., 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968); see Spruill v. Lake Phelps Volunteer Fire Dep't, Inc., 351 N.C. 318, 323, 523 S.E.2d 672, 676 (2000). A clarifying amendment does not alter the original meaning of the statute and, thus, applies retroactively. See Ray v. N.C. Dep't of Transp., 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012); Wilson v. N.C. Dep't of Commerce, 239 N.C. App. 456, 461, 768 S.E.2d 360, 364 (2015); Thornton v. City of Raleigh, 230 N.C. App. 600, 753 S.E.2d 400, 2013 WL 6096919, at *2 (2013) (unpublished table decision). By contrast, an altering amendment modifies a statute's substantive meaning and only applies prospectively. Cf. Ray, 366 N.C. at 9, 727 S.E.2d at 681.

Whether an amendment is altering or clarifying is a question of law for the court. See id. at 9, 727 S.E.2d at 681; In re Ernst & Young, LLP, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). The Supreme Court of North Carolina presumes that the legislature intended to change the law when

7

it amends a statute. See State ex rel. Utils. Comm'n v. Pub. Serv. Co. of N.C., Inc., 307 N.C. 474, 480, 299 S.E.2d 425, 429 (1983); Childers, 274 N.C. at 260, 162 S.E.2d at 483–84; State v. Moore, 240 N.C. App. 465, 477, 770 S.E.2d 131, 140 (2015). Nevertheless, if the amendment serves to address an ambiguity or improve the language of a statute, a court may interpret the amendment as merely clarifying existing law. See Ridge Cmty. Invs., Inc. v. Berry, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977); Childers, 274 N.C. at 260, 162 S.E.2d at 483–84.

A court must undertake a "careful comparison of the original and amended statutes" to "determine whether [an] amendment clarifies [a] prior law or alters it." Ferrell v. Dep't of Transp., 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993); see Ray, 366 N.C. at 10, 727 S.E.2d at 682. Courts can use amendments to interpret a statute by analyzing "the natural inferences arising out of the legislative history as it continues to evolve." Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 216, 388 S.E.2d 134, 141 (1990). If a statute does not expressly address a particular point, and a legislature enacts an amendment to address that point, the amendment is more likely to be clarifying than altering. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 334 N.C. at 659, 435 S.E.2d at 315; Jeffries v. Cty. of Harnett, 817 S.E.2d 36, 48 (N.C. Ct. App. 2018); see also Bryant v. United States, 768 F.3d 1378, 1385 (11th Cir. 2014) (applying North Carolina law). On the other hand, "an amendment to an unambiguous statute indicates the intent to change the law." Childers, 274 N.C. at 260, 162 S.E.2d at 484; see Taylor v. Crisp, 286 N.C. 488, 497, 212 S.E.2d 381, 386–87 (1975); Bryant, 768 F.3d at 1385.

Before the General Assembly amended section 42-46 in 2018, the RRAA did not allow a landlord to "put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by law." N.C. Gen. Stat. § 42-46(h)(3) (2016). Sections

8

42-46(e), (f), and (g) authorize a landlord to charge a tenant a complaint-filing fee, a court-appearance fee, or a second trial fee depending on how far legal action against the tenant progresses. See id. § 42-46(e)–(g). The 2018 amendment to section 42-46(h)(3) explicitly authorizes landlords to charge defaulting tenants "actual out-of-pocket expenses." See id. § 42-46(h)(3), (i) (2018). Specifically, the RRAA, as amended, permits landlords to charge defaulting tenants "[f]iling fees charged by the court," "[c]osts for service of process pursuant to" North Carolina law, and "[r]easonable attorneys' fees actually incurred." Id. § 42-46(i)(1)–(3).

Before the amendment, section 42-46(h)(3)'s text did not provide express guidance on whether a "fee" included actual court costs and other damages arising from breach of a lease. The amendment to section 42-46 unequivocally authorizes landlords to charge defaulting tenants for such actual costs. Because the amendment provided express guidance concerning an issue on which the statute was silent, this court predicts that the Supreme Court of North Carolina would interpret the amendment as clarifying. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 334 N.C. at 659, 435 S.E.2d at 315; Talley v. Lincoln Prop. Co., No. 5:18-CV-550-D, 2019 WL 6119780, at *3–6 (E.D.N.C. Nov. 15, 2019) (unpublished), appeal filed, No. 19-2438 (4th Cir. Dec. 16, 2019); Hampton v. KPM LLC, No. 5:18-CV-485-D, 2019 WL 5618772, at *5–6 (E.D.N.C. Oct. 30, 2019) (unpublished), appeal filed, No. 19-2339 (4th Cir. Nov. 25, 2019); Suarez v. Camden Prop. Tr., No. 5:17-CV-124-D, 2019 WL 1301951, at *4 (E.D.N.C. Mar. 21, 2019) (unpublished), appeal filed, No. 19-1367 (4th Cir. Apr. 9, 2019). Moreover, section 42-46(i) distinguishes the "actual out-of-pocket expenses" authorized by section 42-46(i) from the "late fees" governed by sections 42-46(a) and 42-46(b) and the "administrative fees" governed by sections 42-46(e)–(g). See N.C. Gen. Stat. § 42-46(i). This distinction strongly suggests that a "fee," before the amendment, did not include actual

out-of-pocket expenses. Thus, a comparison of the statute's text before and after amendment indicates that the amendment was clarifying, not altering.

Notably, the General Assembly enacted the amendment in response to a Wake County Superior Court decision that read section 42-46(h)(3) broadly. See Am. Compl.¶ 36 n.1. These circumstances bolster the conclusion that the General Assembly intended to clarify an ambiguity in section 42-46. See, e.g., Thomas v. Barnhill, 102 N.C. App. 551, 553–54, 403 S.E.2d 102, 103–04 (1991); cf. State ex rel. N.C. Milk Comm'n v. Nat'l Food Stores, Inc., 270 N.C. 323, 331, 154 S.E.2d 548, 555 (1967) (stating that "the circumstances surrounding [the] adoption" of a statute can demonstrate legislative intent). Moreover, the 2018 amendment's original (albeit removed) preamble stated that the General Assembly intended to "reaffirm" that landlords could charge defaulting tenants out-of-pocket expenses. S.B. 224 (2d ed.), 2017 Gen. Assemb., Reg. Sess. (N.C. 2017). Finally, the 2018 amendment's original version expressly did not have retroactive effect, but the General Assembly changed that provision in the amendment's final version. See id. Thus, the 2018 amendment's text and legislative history show that the General Assembly's legislative intent was to clarify the RRAA's application to court costs and out-of-pocket expenses.

Because the amendment is clarifying, it applies to this action. See Ray, 366 N.C. at 9, 727 S.E.2d at 681; see also Wells v. Consol. Judicial Ret. Sys. of N.C., 354 N.C. 313, 318, 553 S.E.2d 877, 880 (2001); Ferrell, 334 N.C. at 661–62, 435 S.E.2d at 317; Childers, 274 N.C. at 260, 162 S.E.2d at 483–84. Accordingly, section 42-46(h)(3) at all times permitted defendants to charge Medina for out-of-pocket expenses (i.e., what Medina alleges are "eviction fees"). Moreover, defendants could charge reasonable attorneys' fees. See, e.g., Suarez, 2019 WL 1301951, at *4–5. Medina argues that defendants charged the out-of-pocket expenses before such expenses were incurred in violation of section 42-46(i). See [D.E. 31] 20. Although the expenses may not have

been "actual" when recorded in the ledger, they were actual costs to defendants once the complaint was filed when Medina paid the expenses. The plain language of the statute requires nothing more. See N.C. Gen. Stat. § 42-46(i); Hunt, 350 N.C. at 45, 510 S.E.2d at 163. In sum, because North Carolina law does not forbid landlords to charge defaulting tenants actual out-of-pocket expenses and attorneys' fees, the court grants defendants' motion to dismiss Medina's RRAA claim.

As for Medina's request for declaratory judgment, see Am. Compl. ¶¶ 215–225, the court has discretion to declare the "rights, status, and other legal relations" of the parties under a statute. N.C. Gen. Stat. § 1-253; see Augur v. Augur, 356 N.C. 582, 588, 573 S.E.2d 125, 130 (2002). In light of the court's analysis of section 42-46, declaratory relief serves no useful purpose in this case as any controversy over the statute's construction is resolved. See id. at 588–89, 573 S.E.2d at 130; N.C. Consumers Power, Inc. v. Duke Power Co., 285 N.C. 434, 449, 206 S.E.2d 178, 188 (1974). Accordingly, the court dismisses Medina's request for a declaratory judgment.

## B.

As for Medina's NCDCA and UDTPA claims, see Am. Compl. ¶¶ 182–214, to state a claim under either statute, Medina must plausibly allege that defendants committed an unfair or deceptive act. See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000); Reid v. Ayers, 138 N.C. App. 261, 265–66, 531 S.E.2d 231, 235 (2000); Suarez, 2019 WL 1301951, at *5–6. Because the RRAA does not and did not forbid defendants' actions, Medina does not plausibly allege an unfair or deceptive act. See, e.g., Talley, 2019 WL 6119780, at *6; Suarez, 2019 WL 1301951, at *5–6; Milroy v. Bell Partners, Inc., No. 5:18-CV-516-D, 2019 WL 3451506, at *5–6 (E.D.N.C. July 30, 2019) (unpublished). Accordingly, the court grants defendants' motions to dismiss for failure to state a NCDA and UDTPA claim.

11

## C.

As for Medina's negligent misrepresentation claim, see Am. Compl. ¶¶ 226–236, Medina must plausibly allege she "justifiably reli[ed] to [her] detriment on information prepared without reasonable care" by defendants. Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988); see LRP Hotels of Carolina, LLC v. Westfield Ins. Co., No. 4:13-CV-94-D, 2014 WL 5581049, at *5 (E.D.N.C. 2014) (unpublished); Taylor v. Gore, 161 N.C. App. 300, 303, 588 S.E.2d 51, 54 (2003); Everts v. Parkinson, 147 N.C. App. 315, 328, 555 S.E.2d 667, 676 (2001); Fulton v. Vickery, 73 N.C. App. 382, 388, 326 S.E.2d 354, 358 (2003). Additionally, Medina must allege that she "made a reasonable inquiry into the misrepresentation" and that she either had the opportunity to investigate the claim or that reasonable diligence would not have revealed the truth. Arnesen v. Rivers Edge Golf Club & Plantation, 368 N.C. 440, 454, 781 S.E.2d 1, 11 (2015).

In the complaint, Medina alleges that defendants made two false statements: (1) defendant's claim in the collection letter that defendants filed a complaint for summary ejectment on the date of the letter; and (2) the defendants recorded "Legal Fees" in Medina's ledger for June and July of 2017 before such fees were due. See Am. Compl. ¶ 229–230. Medina alleges that she relied on defendants' representations in the collection letters and ledgers when paying the "eviction fees." See Am. Compl. ¶ 234.

Because the RRAA does not and did not forbid defendants' actions, the defendants' entry and ledger's notation of out-of-pocket expenses is not false. Accordingly, the court rejects Medina's claim as to that statement. Although the collection letter does incorrectly claim that defendants filed the complaint for summary ejectment on the date of the letter, Medina's complaint does not allege

that she made any inquiry into either the ledger or collection letter's representation. Cf. Arnesen, 368 N.C. at 454, 781 S.E.2d at 11. Accordingly, Medina's negligent misrepresentation claim fails.

III.

In sum, the court GRANTS defendants' motion to dismiss the complaint for failure to state a claim [D.E. 26] and DISMISSES plaintiff's amended complaint [D.E. 24].

SO ORDERED. This __3__ day of February 2020.

JAMES C. DEVER III
United States District Judge

13